**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TERESA ROWLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-741-M |
| | ) | |
| CAROLYN COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Teresa Rowland, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant, Carolyn Colvin, Acting Commissioner of the Social Security Administration (Commissioner), denying Plaintiff's application for supplemental security income benefits (SSI). United States District Judge Vicki Miles-LaGrange has referred this matter for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

## I.   **Procedural History**

On July 10, 2012, at forty-three years of age, Plaintiff protectively filed an application for SSI under Title XVI of the Social Security Act (SSA) alleging her disability began January 1, 2004, a date Plaintiff later amended to July 10, 2012. *See* Administrative Record (AR) [Doc. No. 10] 9, 47-48, 61-62, 133, 158-59. The Commissioner denied her claim both initially and upon reconsideration. AR 76-79, 84-86. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision February 25, 2014. AR 9-20. The Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner. AR 1-3. Plaintiff seeks judicial review of that decision.

## II.     The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluation process); *see also* 20 C.F.R. § 416.920.  The ALJ first determined Plaintiff has not engaged in substantial gainful activity since July 10, 2012, the application date.  AR 11.  At step two, the ALJ found Plaintiff has the following severe impairments: major depressive disorder, panic disorder without agoraphobia, PTSD, obesity, degenerative disc disease, carpal tunnel syndrome, bilateral z-foot deformity, and status post knee surgery.  *Id.*  At step three, the ALJ concluded Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal the severity of any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (the Listings).  AR 16.  The ALJ next determined Plaintiff has the residual functional capacity (RFC):

> to lift and carry 10 pounds occasionally and less than 10 pounds frequently.  The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for at least 2 hours during an eight-hour workday.  The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl.  The claimant can frequently handle and finger.  The claimant can understand, remember, and carry out simple, routine, and repetitive tasks.  The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but have occasional contact with the general public.

AR 17.  At step four, the ALJ found Plaintiff unable to perform her past relevant work as a foster care services provider.  AR 18.

The ALJ decided this case at step five of the analysis.  AR 18-19.  At step five, the ALJ must consider a claimant's RFC, age, education, and work experience, as well as the testimony of the vocational expert (VE), to determine if jobs that a claimant is capable of performing exist in significant numbers in the national economy.  *See William v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. Part 404, Subpart P, App. 2.  The Commissioner

bears the burden to present sufficient evidence to support a "not disabled" finding at step five. *See Emory v. Sullivan*, 936 F.2d 1092, 1094 (10th Cir. 1991). Here, the ALJ determined jobs Plaintiff is able to perform exist in significant numbers in the national economy, including the representative sedentary jobs of document scanner, mail clerk, and assembly inspector. AR 19. After concluding in accordance with Social Security Ruling (SSR) 00-4p that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles (DOT), the ALJ determined Plaintiff has not been disabled within the meaning of the Social Security Act since July 10, 2012, the date she filed her application. AR 19-20; *see* SSR 00-4p, 2000 WL 1898704 at *4 (Dec. 4, 2000).

## III.   Plaintiff's Claims

Plaintiff advances two over-arching charges of error, namely, that the RFC is flawed because it did not account for all of Plaintiff's limitations, and that the ALJ failed to apply the proper factors in assessing Plaintiff's credibility. *See* Plaintiff's Brief in Chief (Plaintiff's Brief) at pp. 1, 15. Within these claims, Plaintiff asserts multiple additional charges of error, arguing the ALJ failed to: (1) consider whether Plaintiff's impairments meet or equal Listing 1.00 for the musculoskeletal system, *id.* at pp. 15-16; (2) include certain limitations from her severe and non-severe mental and physical impairments in the RFC, *id.* at pp. 2-15, 17-18; (3) properly evaluate the credibility of Plaintiff's subjective complaints regarding pain, *id.* at pp. 16-21; and (4) consider a report from Plaintiff's mother. *Id.* at pp. 17, 20. Plaintiff further argues that, in light of the flawed RFC, it was error for the ALJ to rely on the VE's testimony that jobs exist in significant numbers in the national economy that someone with Plaintiff's RFC would be capable of performing. *Id.*, at pp. 6, 12.

IV.  **Standard of Review**

"In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'"  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citation omitted).  Judicial review of the Commissioner's final decision is limited to determining whether substantial evidence in the record as a whole supports the factual findings and whether the ALJ applied the correct legal standards.  *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.'"  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).  The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citation omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  *Lax*, 489 F.3d at 1084 (citation omitted).

V.  **Analysis**

A.  **The ALJ Reasonably Considered the Musculoskeletal Listing at Step Three**

Plaintiff argues the ALJ erred in failing to consider whether Plaintiff's impairments meet or equal Listing 1.00 for the musculoskeletal system.  *See* Plaintiff's Brief, at p. 15-16; 20 C.F.R. Part 404, Subpart P, App. 1, Listing 1.00 *et seq.*  The Listings describe impairments the SSA considers per se "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 416.925(a).  Plaintiff bears the "step three burden to present evidence establishing her impairments meet or equal

listed impairments." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). To satisfy

this burden, Plaintiff must show her impairments, considered alone or in combination, "meet all

of the specified medical criteria. An impairment that manifests only some of those criteria, no

matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885,

891 (1990). If a claimant's "impairment is not one that is conclusively presumed to be disabling,

the evaluation proceeds" to the fourth and fifth steps, *Bowen v. Yuckert*, 482 U.S. 137, 141, 107

S. Ct. 2287, 2291 (1987), at which point the Commissioner "must determine whether the

claimant retains the ability to perform either his former work or some less demanding

employment." *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S. Ct. 1952, 1953 (1983).

An ALJ is required to discuss the evidence at step three and explain the reasons for his or

her conclusion that a claimant's impairments are not severe enough to meet or equal a relevant

and applicable listing. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

Notwithstanding Plaintiff's assertion to the contrary, it is evident from the letter of the disability

determination the ALJ did precisely that: he evaluated the medical evidence regarding Plaintiff's

musculoskeletal limitations and explained his reasons for concluding the severity of those

impairments did not meet or equal the relevant listing:

> The claimant does not have findings of a loss of gait and station, nor are there
> findings of lack of gross and fine manipulation. There is no evidence of joint
> dysfunction or malformation. She does not have consistent evidence of reflex
> loss, motor loss, sensory loss, muscle atrophy, positive straight-leg raising or
> other findings *to meet the requirements for listed musculoskeletal impairments*.

AR 16 (emphasis added). The ALJ further observed at step three that "[i]n the activities of daily

living, the claimant has mild restriction. The claimant has no problems with personal care. She

prepares simple meals, does housecleaning and laundry. She drives a car, shops at least once a

week and handles finances." AR 16, *citing* AR 189-97 (Exh. 6E, Function Report – Adult,

completed by Plaintiff). In addition, when discussing the medical evidence pertaining to Plaintiff's obesity at step three, the ALJ observed "[h]er gait was normal for speed, stability, and safety. There is no report of shortness of breath, cardiovascular or musculoskeletal body system complications caused by obesity." *Id.* In this way, the ALJ specifically discussed the evidence pertaining to Plaintiff's musculoskeletal system and his reasons for concluding her impairments were not severe enough to meet or equal the relevant listing. *See Clifton*, 79 F.3d at 1009.

Even if the ALJ's step-three analysis were somehow insufficient, such error would be harmless. *Riddle v. Halter*, 10 F. App'x. 665, 666–67; *see also Zebley*, 493 U.S. at 530, 110 S. Ct. 885. "[H]armless error analysis 'nevertheless may be appropriate to supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Fischer-Ross*, 431 F.3d at 733, *quoting Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Such is the case here.

To establish functional loss sufficient to meet the specified medical criteria for the musculoskeletal system, a claimant must demonstrate "the inability to ambulate . . . or . . . perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment." 20 C.F.R. Part 404, Subpart P, App. 1, Listing 1.00(B)(2)(a). The inability to ambulate effectively means an individual is incapable "of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," and cannot "travel without companion assistance to and from a place of employment or school," *id.* at 1.00(B)(2)(b)(2), whereas the "[i]nability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities,

*i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.* at 1.00(B)(2)(c).[1]

According to the record medical evidence, Plaintiff received diagnoses of carpal tunnel syndrome in both wrists and degenerative changes in both knees in the summer of 2012. AR 11-12, 242, 250-51, 265-67, 435. In September 2012, treating physician Richard J. Langerman, Jr., D.O., performed median nerve decompression on Plaintiff's left wrist and arthroscopic surgery on her left knee with partial medial and lateral meniscectomies. AR 12, 417-18. By October 2012, Plaintiff's left knee and wrist were well healed and she had full range of motion with no pain or tenderness. AR 12, 298-302. In November 2012, Dr. Langerman performed median nerve decompression surgery on Plaintiff's right wrist. AR 15, 297. Several weeks later, Dr. Langerman noted Plaintiff "was doing great as to her hands" with no paresthesias, numbness, pain, or tingling, and that her left knee was markedly improved as well. AR 15, 296, 389. After Plaintiff suffered a fall and tore her right meniscus, Dr. Langerman performed arthroscopy surgery with partial medial meniscectomy and chondroplasty on Plaintiff's right knee in April 2013. AR 15, 380-88, 413-14. Following that surgery, Plaintiff reported the pain in her knee was slowly improving and twice declined her physician's offer of steroid injections. AR 380-82.

Also in September 2012, shortly after the surgeries on her left wrist and knee, but prior to the surgeries on her right wrist and knee, consultative physician Robin Hall, M.D., examined Plaintiff to evaluate her claimed physical impairments. AR 12-13, 289-94. Plaintiff reported she was able to walk fifteen minutes without having to stop. AR 12, 289. Dr. Hall observed that Plaintiff's "[g]rip strength is 5/5 bilaterally," and that she exhibited "normal hand skills. Finger to thumb opposition is adequate. Fine tactile manipulation of objects was normal. Posture was

---

[1] Upper-extremity functions include "reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living." *Id.* at 1.00(B)(2)(c).

good. Range of motion (ROM) was within normal limits." AR 13, 290. Although Plaintiff's "[t]oe and heel walking were weak bilaterally secondary to pain," Dr. Hall observed Plaintiff "ambulated with a stable, steady and safe gait at an appropriate speed without the use of any assistive devices." AR 13, 290.

As discussed, to demonstrate a degree of functional loss sufficient to meet or equal the musculoskeletal listing, Plaintiff must show her impairments render her unable either to ambulate or to perform fine and gross movements effectively on a sustained basis. 20 C.F.R. Part 404, Subpart P, App. 1, Listing 1.00(B)(2)(a). Examples of ineffective ambulation include:

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id*, 1.00(B)(2)(b)(2). Examples of ineffective fine and gross movements include "the inability to prepare a simple meal and feed oneself, . . . take care of personal hygiene, . . . sort and handle papers or files, and . . . place files in a file cabinet at or above waist level." 20 C.F.R. Part 404, Subpart P, App. 1, Listing 1.00(B)(2)(c).

On December 18, 2013, Plaintiff arrived at the administrative hearing without having to use a cane. AR 27. She testified she was able to walk for 100 feet at a time on her best days. AR 35. She acknowledged the tingling in her hands had improved following the surgeries, as had the condition of both knees. AR 37-38. Plaintiff admitted she is able to drive and testified she takes a car trip once a month, driving forty minutes each way, to visit a friend and take him to the food bank. AR 16-17, 33-34. She further testified she is able to bathe, dress herself, prepare simple meals, and straighten things up around her home, and that she shops and does laundry once a week. AR 16-17, 31-33, 38. Thus, the record evidence amply demonstrates

Plaintiff has the ambulatory ability to effectively "carry out activities of daily living" and "travel without companion assistance to and from a place of employment or school." 20 C.F.R. Part 404, Subpart P, App. 1, Listing 1.00(B)(2)(b)(2). The evidence further shows Plaintiff is able to perform fine and gross movements effectively enough "to initiate, sustain, or complete activities" of daily living. *Id.* at 1.00(B)(2)(c).

There is no evidence to support Plaintiff's claim the ALJ either failed to consider or insufficiently analyzed whether her impairments meet or equal Listing 1.00 at step three. Even if there were, the record medical evidence demonstrates Plaintiff did not meet her burden to prove her musculoskeletal impairments were sufficiently severe to be found presumptively disabling at step three. Consequently, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way," and thus any error the ALJ made in discussing the evidence or explaining the reasoning for his step-three decision was harmless. *Fischer-Ross*, 431 F.3d at 733-34 (10th Cir. 2005), *quoting Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### B.    Substantial Evidence Supports the ALJ's RFC Determinatoin

Plaintiff contends the ALJ committed reversible error by failing to include all of her mental and physical limitations in the RFC. At step four, the ALJ must review the claimant's RFC and the demands of the work she has done in the past. *Henrie v. U.S. Dept. of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993). This analysis comprises three phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), . . . and in the second phase, [the ALJ] must determine the physical and mental demands of the claimant's past relevant work. . . . In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. . . . At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted). Plaintiff argues the ALJ erred at the first and third phases of step four. *See* Plaintiff's Brief at p. 6. As explained below, however, substantial record evidence exists in support of the RFC, the ALJ applied the correct legal standards, and the Commissioner's decision should be affirmed.

### 1. Substantial Evidence Supports the ALJ's Mental RFC

Plaintiff argues the ALJ's RFC restricting her to simple work is "a direct reflection of the error in applying SSR 96-8p" because it does not express Plaintiff's mental limitations in terms of work-related functions. *See* Plaintiff's Brief at 9-13; *citing* SSR 96-8p, 1996 WL 374184 at *6 (July 2, 1996). Plaintiff surmises the ALJ failed to incorporate Plaintiff's panic disorder and moderate limitations in social functioning in the RFC because he "did not properly grasp" the "distinction between skills and mental functions." *See* Plaintiff's Brief at p. 13.[2] In fact, Plaintiff goes so far as to declare "[t]he ALJ never undertook *any* analysis of what proper and actual 'limitations' . . . the severe impairments might impose upon the RFC"; "failed to include *any* limitations in the RFC from the severe mental health impairments"; and assessed an RFC "devoid of *all* of the proper limitations." *See* Plaintiff's Brief at pp. 9, 13 (emphasis added). Plaintiff further argues that due to the alleged flaws in the RFC, the ALJ's step-five findings are not supported by substantial evidence. Each of these charges is without merit.

Concerning Plaintiff's mental limitations, the ALJ found at step two her severe impairments include "major depressive disorder, panic disorder without agoraphobia, [and] PTSD." AR 11. Once an ALJ deems a claimant's mental impairments severe at step two, he or she must discuss the impact of those impairments throughout the remainder of the disability

---

[2] While Plaintiff also argues the RFC does not reflect her "moderate difficulty in . . . concentration, persistence and pace," both of the nonexamining state agency mental health experts assessed her as having only mild limitation in those areas. *Compare* Plaintiff's Brief at p. 13 *with* AR 52, 67.

determination. 20 C.F.R. § 404.1545(a)(2). The presence of impairments, even if severe, does not necessarily mandate corresponding limitations in the RFC, however. *See Cavalier v. Colvin*, 2014 WL 7408430, at *2 (N.D. Okla. Dec. 30, 2014) (unpublished).

That the ALJ included limitations related to Plaintiff's mental impairments in the RFC is evident from the face of the disability determination. First, the ALJ explained that, in formulating the RFC, he gave only some weight to the nonexamining mental health experts who opined Plaintiff is capable of performing simple and some complex tasks, finding instead that "she is limited to simple work only and not capable of semi-skilled work," and restricting her in the RFC to "simple, routine, and repetitive tasks." AR 17, 18. In this way, the ALJ's mental RFC was more restrictive than that suggested by both of the state agency psychologists. The ALJ further expressed Plaintiff's mental impairments in the RFC by restricting her to only "occasional contact with the general public." AR 17. At step four, the ALJ found the current RFC "for sedentary, simple work" rendered Plaintiff unable to perform her past relevant work (PRW) as a foster care service provider, a job categorized as "medium, semi-skilled work, SVP 3."[3] *Id.* In addition, at step five, the ALJ noted Plaintiff's "ability to perform all or substantially all of the requirements of [the full range of sedentary work] has been impeded by additional limitations," as expressed in the RFC. AR 19.

Plaintiff insists the RFC's "limitation to 'simple work' does not logically encompass a person exhibiting panic attacks, which will take her off task and distract other workers, nor does it identify how much she will be behind in the pace of work as compared to other workers when panic attacks occur." *See* Plaintiff's Brief at pp. 9-10. While the Tenth Circuit repeatedly has

---

[3] SVP is the acronym for "specific vocational preparation." The DOT assigns an SVP time for each occupation described therein. "Unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." *See* SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

held that a limitation to "simple work" or "unskilled jobs," without more, is generally insufficient to express a claimant's mental impairments, *see, e.g., Chapo v. Astrue*, 682 F.3d 1285, 1291 n.3 (10th Cir. 2012); *Groberg v. Astrue*, 505 F. App'x. 763, 770 (10th Cir. 2012), it recently clarified that restrictions "to understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions" in an RFC "—or even a limitation to 'unskilled work'—can adequately account for a claimant's mental impairments, depending on their nature." *Richards v. Colvin*, ___ F. App'x ___, No. 15-6121, 2016 WL 556745 at *3 (10th Cir. Feb. 12, 2016) (unpublished) (*citing Vigil v.* Colvin, 805 F.3d 1199, 1203-04 (10th Cir. 2015)).

Here the ALJ did not express Plaintiff's mental impairments merely by limiting her to "understand, remember, and carry out simple, routine, and repetitive tasks," however. Rather, the ALJ made an additional finding to account for Plaintiff's moderate limitations in social functioning, namely, that she is to have only "occasional contact with the general public." AR 17. Together, these RFC restrictions were sufficient to express Plaintiff's mental impairments in terms of work-related mental functions. *See Goforth v. Covlin*, No. CIV-15-855-STE, 2016 WL 2889080, at *3 (W.D. Okla. May 17, 2016) (unpublished) (reasoning that while RFC limitation to "simple" work, standing alone, might have been insufficient to account for claimant's mood disorder, the fact that "the ALJ made an *additional* finding which encompassed [claimant's] ability to work with others" was sufficient to account for Plaintiff's panic attacks) (emphasis in original).

Here, the limitations on work-related mental functions the ALJ expressed in the RFC were based on the opinions of non-examining state agency mental health experts that, despite her recognized anxiety and depression, Plaintiff can (1) perform simple and some complex tasks; (2)

relate to others on a superficial work basis; and (3) adapt to a work situation. AR 18, 53, 57, 68, 72. They are also in harmony with the medical opinion of Stephanie C. Crall, Ph.D., the examining state agency psychologist, who, despite diagnosing Plaintiff with major depressive disorder, panic disorder, and PTSD concluded Plaintiff nonetheless retained the "ability to engage in work-related mental activities, such as sustaining attention, understanding, and remembering and to persist at such activities was likely adequate for simple and some complex tasks." AR 17, 282-83. The activities discussed in this manner by all three mental health experts are work-related mental functions. *See* SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996) ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."); *Cousin v. Colvin*, No. CIV-15-150-D, 2016 WL 355494 at *2 (W.D. Okla. Jan. 29, 2016) (unpublished) (holding RFC restricting claimant to "simple tasks and instructions only; no more than occasional contact with coworkers and supervisors; and no public contact" accurately reflected, in work-related functions, the nature and degree of claimant's mental limitations).

In this way, the ALJ's RFC accounted for specific, functional, work-related restrictions Plaintiff might experience as a result of her mental impairments. Plaintiff's mere belief that her panic disorder will distract others does not provide a legal basis on which to find error in the RFC. *See Goforth*, 2016 WL 2889080, at *3. As the record stands, the ALJ properly analyzed the medical opinions of the examining and nonexamining mental health experts on the subject of the work-related capacity Plaintiff retains despite her psychological diagnoses. AR 14-15. Plaintiff does not challenge the ALJ's reliance on the state agency psychologists' opinions and

the undersigned finds the ALJ had no duty to incorporate further panic-related work restrictions into the RFC. Thus, Plaintiff has failed to establish her mental RFC is unsupported by substantial evidence. *See Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. Aug. 15, 2014) (unpublished).

## 2. Substantial Evidence Supports the ALJ's Physical RFC

Plaintiff argues the ALJ erred in determining Plaintiff has "a sedentary RFC with walking up to two (2) hours a day" because "some days she cannot walk very far [or at all] depending on her symptomology" and "[s]he should not be allowed to walk at all when her gout or pain from gout or her other problems occur." *See* Plaintiff's Brief at p. 5. In addition, Plaintiff argues the RFC does not contain proper limitations for her hands but fails to specify what those additional limitations should be. *Id.* Plaintiff further insists the ALJ erred by failing to include proper limitations from her pain, standing and walking limitations, degenerative disk disease, feet deformity, and hand and knee impairments in either the RFC assessment or the inquiries to the VE. *Id.* at pp. 6-9. "Also not included in the RFC is the need for her use of a one-hand assistive device (cane), orthotics/braces on her legs and feet to assist in ambulation." *Id.* at p. 8.

A claimant's RFC is the most the individual can still do despite his or her limitations. 20 C.F.R. § 404.1545(a). Plaintiff's treating physician, Richard J. Langerman, Jr., D.O., stated that while an MRI of Plaintiff's feet revealed "some significant changes," most of them were "asymptomatic for her" and required no treatment other than "CAD/CAM orthotics," which Plaintiff testified she wears in her shoes every day. AR 36-37, 246. In addition, Plaintiff "does have marked flatfoot deformity, but this does not give her pain." AR 384. While Plaintiff alleges "she has lost feeling in [her feet] from tarsal tunnel syndrome," *see* Plaintiff's Brief at p. 8, examining neurologist Gabriel Pitman, D.O., observed the condition was "mild." AR 12; 267.

The ALJ concluded Plaintiff had the physical ability "to lift and carry 10 pounds occasionally and less than 10 pounds frequently. . . . sit for about 6 hours . . . stand and walk for at least 2 hours during an eight-hour workday. . . . occasionally climb, balance, stoop, kneel, crouch, and crawl. . . . [and] frequently handle and finger." AR 17. In making this finding, the ALJ reasonably considered and gave great weight to the physical RFC assessments of nonexamining state agency physicians James Metcalf, M.D., and Luther Woodcock, M.D., who each found Plaintiff capable of standing and walking two hours in a work day. AR 14-15, 54, 69. In addition, Drs. Metcalf and Woodcock opined Plaintiff had no postural or manipulative limitations, and was capable of performing the full range of sedentary work. AR 47-58, 61-74; 20 C.F.R. 404.1567(a). The ALJ's RFC was again more restrictive in that he assessed Plaintiff as having the ability to climb, balance, stoop, kneel, crouch, and crawl on an occasional basis only. AR 17.

Plaintiff further faults the ALJ for failing to discuss her alleged gout and dyslexia. *See* Plaintiff's Brief at pp. 5, 14-15. While Plaintiff did report a history of gout to consultative examiner Robin Hall, M.D., which the ALJ expressly noted in the disability determination, AR 13, there is no record evidence any physician ever diagnosed Plaintiff with the condition. AR 291. There is likewise no record diagnosis of dyslexia, the solitary reference to which was Plaintiff's testimony at the administrative hearing in response to the ALJ's question about problems reading and writing. AR 28. To the contrary, Plaintiff stated her hobbies included reading and writing, she used to read a book a day, would go to the library on a regular basis, and could follow written instructions more easily than spoken ones. AR 14, 194-95.

Concerning Plaintiff's argument the ALJ should have included in the RFC further restrictions regarding for the use of her hands, *see* Plaintiff's Brief at pp. 9-10, the ALJ

reasonably considered the fact that Plaintiff's carpal tunnel release surgeries appear to have ameliorated the problem.  AR 12, 15.  Notes in December 2012 stated that the claimant was doing great as to her hands, had full range of motion, and was experiencing no paresthesias, numbness, pain, or tingling.  AR 15, 389.  Consultative examiner Dr. Hall observed Plaintiff had full grip strength, normal hand skills, adequate finger to thumb opposition, and normal fine tactile manipulation.  AR 13, 290, 294.  The contrary findings Plaintiff cites in support of her argument all pre-date her carpal tunnel release surgeries, which occurred less than twelve months after she filed her SSI application.  *See* Plaintiff's Brief at 9; AR 232, 247.

Plaintiff further argues the ALJ erred in failing to include in the RFC her alleged need for a cane.  Plaintiff's Brief at 12-13.  At the administrative hearing, Plaintiff testified she had been using a cane for about six months and that it was not prescribed by a doctor but was something she had "picked up on her own."  AR 27.  Plaintiff acknowledged she does not use the cane all the time and did not use it to attend the hearing.  AR 27-28, 36.  Record medical evidence also supports the conclusion that, after surgery on her left knee but prior to surgery on her right, Plaintiff did not require an assistive device to walk.  AR 289-90.  In addition, Plaintiff twice rejected Dr. Langerman's offer of steroid injections to relieve any discomfort in her knees.  AR 380-82.

"[A]n ALJ is not required to discuss every piece of evidence."  *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (internal quotation marks omitted).  Indeed, when an "ALJ indicates he has considered all the evidence[,] our practice is to take the ALJ at his word."  *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (internal quotation marks omitted).  What is more, a claimant's own fleeting references to an impairment are insufficient to establish its existence by medical evidence consisting of signs, symptoms, and laboratory findings as required by 20

C.F.R. §§ 404.1508, 416.908. *See Lankford v. Colvin*, 612 F. App'x 496, 499-500 (10th Cir. 2015) (unpublished).

As noted above, the ALJ thoroughly discussed the record medical evidence, and there is no indication that, despite not expressly mentioning in the disability determination certain fleeting references to Plaintiff's alleged but unestablished impairments, the ALJ did not take them into account. Furthermore, Plaintiff fails to point to any probative evidence that demonstrates she required greater physical limitations than those the ALJ expressed in the RFC. Consequently, the undersigned finds that the ALJ's interpretation of the evidence was reasonable and that he did not commit reversible error by failing to put restrictions in the RFC related to Plaintiff's alleged gout, dyslexia and need for a cane in the RFC. *See Lax*, 489 F.3d at 1084.

### 3. The ALJ Reasonably Found Plaintiff's Subjective Complaints of Pain Less Than Fully Credible

Plaintiff claims the ALJ "wholly failed to specify any proper evidence that cause him to disbelieve [Plaintiff] and her pain," that he "did not apply any of the well-respected credibility factors," and "dispensed with any analysis" on the subject. *See* Plaintiff's Brief at pp. 15, 18-19. Plaintiff further charges the ALJ's credibility analysis comprised "but one, single boilerplate credibility statement" without specific findings. *Id.* at p. 19. As a result of this allegedly improper pain assessment, Plaintiff insists the ALJ's step-five decision was in error. *Id.* at p. 18.

It is well-established that "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett*, 395 F.3d at 1173 (citation, brackets, and internal quotation marks omitted). In addition, to demonstrate pain is disabling, a claimant must show it is "so severe, by itself or in conjunction with other impairments, as to

preclude any substantial gainful employment." *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (internal quotation marks omitted).

An ALJ uses the three-step analysis set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), to evaluate a claimant's complaints of disabling pain. Under *Luna*, an ALJ is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether a loose nexus exists between the nature of the impairment and the sort of pain alleged; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling. *Id*. at 163-64. In undertaking this analysis, the ALJ should consider evidence regarding "a claimant's persistent attempts to find relief for h[er] pain and h[er] willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems" and "the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Id*. at 165–66; *see* 20 C.F.R. § 404.1529(c)(3). But so long as the ALJ "sets forth the specific evidence he relies on in evaluating the claimant's credibility," he need not make a "formalistic factor-by-factor recitation of the evidence," *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), or "address each factor in his decision." *Duncan v. Colvin*, 608 F. App'x 566, 578 (10th Cir. 2015). In assessing a claimant's credibility "common sense, not technical perfection, is our guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

Here, on the subject of daily activities, the ALJ referenced Plaintiff's own statements in concluding Plaintiff "could do all of her activities of daily living . . . . has no problems with personal care. She prepares simples meals, does housecleaning and laundry. She drives a car, shops at least once a week and handles finances." AR 18. In addition, Plaintiff "lived with her

disabled daughter . . . used her Facebook account . . . [and] had been doing foster care. She gave it up because it broke her heart when her last child went back home." *Id.* The ALJ further noted that, despite her claimed social anxiety, Plaintiff "visits with others in person, by phone and on the computer. She goes to the library and visits with others." *Id.* In this manner, the ALJ closely and affirmatively linked his credibility assessment to specific record evidence. *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (ALJ reasonably found claimant's description of her daily activities did not indicate significant limitations, where the claimant could care for herself, her home, and her children, and also drive, shop, handle finances, garden, visit friends and go out to eat); *Maestas v. Colvin*, 618 F. App'x 358, 360 (10th Cir. 2015) (unpublished) (affirming ALJ's credibility analysis that took into account daily activities such as doing dishes, laundry, and other household chores, grocery shopping, and going for daily walks).

What is more, at step two of the analysis, the ALJ discussed other evidence inconsistent with Plaintiff's alleged limitations, including the effectiveness of the treatment she received. AR 11-16; *see* 20 C.F.R. § 416.929(c)(3)(iv). By all accounts, Plaintiff's carpal tunnel syndrome and knee pain were successfully treated by surgery. AR 378, 382, 389. In addition, on the subject of her need for pain relief, notes from her treating physician reveal Plaintiff twice refused steroid injections to relieve discomfort in her knees. AR 380-82; *see Qualls*, 206 F.3d at 1372-73 (holding ALJ properly considered what attempts claimant made to relieve her pain, including whether she took pain medication, in evaluating the veracity of her contention her pain was so severe as to be disabling). The ALJ's step-two findings, coupled with indisputable aspects of the medical record, demonstrate the ALJ's adverse credibility finding was supported by substantial evidence. Thus, the ALJ reasonably found Plaintiff's subjective complaints less than fully credible.

### 4.  Any Error in the ALJ's Consideration of Plaintiff's Mother's Function Report Was Immaterial

The Commissioner agrees with Plaintiff that the ALJ should have discussed Plaintiff's mother's function report, but argues such omission constitutes a harmless, technical error. *See* Defendant's Brief at pp. 18-19; AR 181-88. The Tenth Circuit has found such error harmless where, as here, the statement was cumulative of the claimant's testimony, which the ALJ found not credible. *See Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. March 26, 2013) (unpublished) (citing *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011); *see also Smith v. Colvin*, No. CIV-13-144-R, 2014 WL 50835, at *6 (W.D. Okla. Jan. 7, 2014) (unpublished) ("[A]ny error in the ALJ's failure to expressly address the non-medical, non-professional testimony of Plaintiff's son, Eric, and [her significant other] was harmless because the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.") (internal quotation marks omitted).

Plaintiff's mother's third-party function report did not differ significantly from Plaintiff's own function report. *Compare* AR 181-88 *with* AR 190-97. As discussed above, the ALJ reasonably found Plaintiff's subjective complaints less than fully credible. As such, the Court should follow the Tenth Circuit's guidance and determine the ALJ's omission of any discussion of Plaintiff's mother's report was immaterial.

### 5.  The ALJ Reasonably Relied on the VE's Testimony at Step Five

Throughout her brief, Plaintiff asserts the ALJ's decision at step five was erroneous because his hypotheticals to the VE were based on an errant RFC and the VE's responses thereto were therefore unreliable and intrinsically flawed. As discussed, substantial evidence supports the ALJ's RFC and Plaintiff has failed to identify instances in which the ALJ did not apply the

correct legal standards. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). Consequently, Plaintiff's charge in this regard is without merit.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that the Commissioner's decision be affirmed.

## **NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Any objection must be filed with the Clerk of the District Court by July 11, 2016. Failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 27th day of June, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE